Case No. 5:24-cv-1043

Cause No. __2024CI19710__

| | |
|---|---|
| THE STATE OF TEXAS,<br>　　*Plaintiff,*<br><br>v.<br><br>JACQUELYN CALLANEN in her official capacity as Bexar County Election Administrator; PETER SAKAI, in his official capacity as Bexar County Judge; REBECA CLAY-FLORES, in her official capacity as Bexar County Commissioner; JUSTIN RODRIGUEZ, in his official capacity as Bexar County Commissioner; GRANT MOODY, in his official capacity as Bexar County Commissioner; TOMMY CALVERT, in his official capacity as Bexar County Commissioner.<br><br>　　*Defendant.* | In the District Court of<br><br>Bexar County, Texas<br><br>_____ Judicial District |

**Plaintiff's Original Verified Petition and
Application for Temporary Restraining Order,
Temporary Injunction, and Permanent Injunction**

　　1.　　The State of Texas, by and through Ken Paxton, the Attorney General of Texas, files this Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendants Jacquelyn Callanen, in her official capacity as Bexar County Election Administrator; Peter Sakai, in his official capacity as Bexar County Judge; as well as

Rebeca Clay-Flores, Justin Rodriguez, Grant Moody, and Tommy Calvert, in their official capacity as Bexar County Commissioners.

2. The State seeks emergency injunctive relief against the named defendants to prevent them from giving a partisan organization, in violation of state and local procurement procedures, hundreds of thousands of taxpayer dollars to mail unsolicited voter registration applications to an untold number of Bexar County residents, regardless of whether those residents have requested such an application or are even eligible to vote. Defendants' actions will create confusion, facilitate fraud, undermine confidence in elections, and are illegal *ultra vires* acts because they exceed statutory authority.

## Discovery Control Plan

3. Discovery is intended to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3.

## Claims for Relief

4. Plaintiff seeks injunctive relief. Therefore, this suit is not governed by the expedited actions process in Tex. R. Civ. P. 169.

## Venue

5. Venue is proper in Bexar County under section 15.002(a)(1), (a)(2), and (a)(3) of the Texas Civil Practices and Remedies Code.

## Waiver of Sovereign Immunity

6. Neither sovereign immunity nor governmental immunity applies to the State of Texas's *ultra vires* claim. "The basic justification for th[e] *ultra vires* exception to sovereign immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the state at all." *Hall v. McRaven*, 508 SW.3d 232, 238 (Tex. 2017) (internal quotation marks and citations omitted). As a

result, "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state over one of its agents." *Id.*

## Parties

7. The plaintiff is the State of Texas, by and through its Attorney General, Ken Paxton. *Yett v. Cook*, 115 Tex. 205, 221, 281 S.W. 837, 842 (1926) ("That the state has a justiciable 'interest' in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law does not admit of serious doubt."); *see also State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015) ("As a sovereign entity, the State has an intrinsic right to enact, interpret, and enforce its own laws.").

8. The defendants include Jacquelyn Callanen, in her official capacity as the Bexar County Election Administrator. *See Hall*, 508 S.W. at 240 (stating that "an ultra vires suit must lie against the allegedly responsible government actor in his official capacity") (internal quotation marks omitted). She may be served with process at 1103 S. Frio, Suite 100, San Antonio, TX 78207.

9. The defendants include Peter Sakai, in his official capacity as the Bexar County Judge. *Id.* He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

10. The defendants include Rebeca Clay-Flores, in her official capacity as Bexar County Commissioner. *Id.* She may be served with process at 101 W. Nueva, Suite 1009, San Antonio, TX 78205.

11. The defendants include Justin Rodriguez, in his official capacity as Bexar County Commissioner. *Id.* He may be served with process at 101 W. Nueva, 10th Floor, San Antonio, TX 78205.

12. The defendants include Grant Moody, in his official capacity as Bexar County Commissioner. *Id*. He may be served with process at 101 W. Nueva, Suite 1007, San Antonio, TX 78205.

13. The defendants include Tommy Calvert, in his official capacity as Bexar County Commissioner. *Id*. He may be served with process at 101 W. Nueva, Suite 1029, San Antonio, TX 78205.

**Factual Background**

14. On September 2, 2024, Attorney General Ken Paxton sent a letter to the Bexar County Commissioners Court expressing concerns over a proposal involving mass mailing of voter registration applications. Letter from Texas Attorney General Ken Paxton, *Bexar County Voter Registration*, (Sep. 2, 2024), https://tinyurl.com/mudk3f83.

15. In the letter, the Attorney General warned the Bexar County Commissioners Court that such a proposal is *ultra vires* since Bexar County has no authority granted to it by law to print and mail unsolicited voter registration forms. *Id*.

16. The letter pointed out that, in addition to being *ultra vires*, the agenda item makes elections in Texas less secure by indiscriminately inviting county residents to vote regardless of legal status. *Id*.

17. Over 6,500 non-citizens have been removed from Texas voter rolls since 2021. Press Release, Office of the Texas Governor, *Governor Abbott Announces Over 1 Million Ineligible Voters Removed from Voter Rolls* (Aug. 26, 2024), https://gov.texas.gov/news/post/governor-abbott-announces-over-1-million-ineligible-voters-removed-from-voter-rolls. Of those non-citizens, nearly 2,000 have voted. *Id*.

18. On September 3, 2024, the Bexar County Commissioners Court held a public meeting. *See generally* Bexar County Commissioners Court, Agenda for Sept. 3, 2024,Bexar County,https://www.bexar.org/AgendaCenter/ViewFile/Agenda/_09032024-1621 (last visited Sept. 3, 2024) (Recording to be available at https://bexarcountytx.new.swagit.com/videos/313881)

19. At this meeting, the Commissioners Court approved an agenda item hiring the company Civic Government Solutions (CGS) to conduct services for the County that the County is unauthorized to perform.

20. CGS claims to have the "most comprehensive database of unregistered voters." Home, Civic Government Solutions (last visited Sept. 3, 2024), https://civicgs.com/. It states it has "broad range of expertise, including data scientists, voting law experts, and mail logistics experience" that enables it to "deliver the market's most reliable and effective voter registration solutions." *Id*.

21. It has sent more than 10 million mailers since 2018 and has registered approximately 2 million people since 2018. *Id*.

22. Agenda item 66 called for approving a purchase order paying CGS hundreds of thousands of dollars to print and mass mail voter registration applications.

23. Agenda item 66 read:

Discussion and appropriate action regarding granting a discretionary exemption to the competitive bidding requirements set forth in the Texas County Purchasing Act for the purpose of awarding a purchase order to Civic Government Solutions, LLC to print and mail State Voter Registration Forms, with postage paid return envelopes, to unregistered voters in location(s) based on targeting agreed to by the County, to include data and reporting in the amount of $392,700, on a discretionary exemption basis, in accordance with Texas Local Government Code § 262.024(7)(a), as requested by Commissioners Court; and authorizing

the Purchasing Agent to execute contract and file the appropriate award documents for record.

24. According to the County, CGS will mail out 210,000 applications in hopes of getting 75,000 new registrants, resulting in a 3-4% upswing in votes cast in the county.

25. The CEO of CGS, Jeremy Smith, (Smith) told the Bexar County Commissioners Court that CGS would register these voters at an estimated cost of about $7 per voter.

26. During the meeting, several members of the public voiced concerns over how the agenda item could negatively affect the integrity of elections in Texas.

27. Several citizens expressed concerns over Smith's prior public comments made on a podcast about his interest in getting people to vote for progressive candidates. *See Jeremy Smith of Civitech Discusses Data and Tools for Progressive Politics*, THE GREAT BATTLEFIELD (Sep. 2, 2022), https://greatbattlefield.com/episode/data-and-tools-for-progressive-politics-with-jeremy-smith-of-civitech/.

28. Smith is also listed as CEO of the company Civitech. *See* Texas Comptroller of Public Accounts, *Taxable Entity Search Results*, "Civitech, INC." https://mycpa.cpa.state.tx.us/coa/coaSearchBtn. (last visited Sep. 3, 2024).

29. Civitech is listed as the registrant contact of the CGS internet domain. *See* WHOIS.com, https://www.whois.com/whois/civicgs.com. (last visited Sept. 3, 2024),

30. Civitech has been described as a "Progressive data startup." Sara Fischer, *Progressive data startup Civitech rases $10M*, Axios, https://www.axios.com/2022/01/12/dem-startup-civitech-raises-10-million-midterm (last visited Sep. 3, 2024).

31. Its website claims that the company's goal is to "drive support for progressive causes and candidates" and that "[r]egistering the unregistered likely Democratic voters across the nation could be the key to securing Democratic victory in 2024." *Closing the Voter Registration Gap*, Civitech, https://civitech.io/post/closing-the-voter-registration-gap/ (last visited Sep. 4, 2024).

32. During the meeting, Smith maintained that the efforts of CGS to mail voter registrations would remain nonpartisan.

33. But given the appearance of partisanship, at least one member of the Commissioners Court expressed concern over the County dispensing with the competitive bidding process in retaining CGS. *See* Texas County Purchasing Act § 262.024(7)(a).

34. Elections Administrator Jacquelyn Callanen objected to the measure. Her concerns included the potential for the mass mailing of voter registration applications to worsen the backlog that already exists in the Bexar County Elections Department.

35. After extensive public comment and significant pushback, the agenda item passed 3-1 in approving the purchase order with one member of the Commissioners Court abstaining.

## Legal Background

36. It is well-established that "[t]he authority vested in Texas counties—and county officials—is limited." *State v. Hollins*, 620 S.W.3d 400, 406 (Tex. 2020). This is because political subdivisions of the state—such as counties, municipalities, and school districts—"represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon

them." *Id.* They are "a subordinate and derivative branch of state government." *Avery v. Midland Cty.*, 406 S.W.2D 422, 426 (Tex. 1966).

37. Bexar County is a political subdivision of the State of Texas; it therefore possesses only those powers granted to it by the Texas Constitution or the Texas Legislature. *E.g.*, *Town of Lakewood v. Bizios*, 493 S.W.3d 527, 536 (Tex. 2016). More precisely, it:

> possesses and can exercise the following powers, and no others: First, those *granted in express words*; second, those *necessarily or fairly implied* in or incident[ ] to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but *indispensable*. "*Any* fair, *reasonable*, substantial *doubt* concerning the existence of power is resolved by the courts against the corporation, *and the power is denied*."

*Foster v. City of Waco*, 113 Tex. 352, 355 (Tex. 1923).

38. In the case of the Election Code, the Legislature further cabined the power of political subdivisions, instructing that "[a] public official or election official may not create, alter, modify, waive, or suspend any election standard, practice, or procedure mandated by law or rule in a manner not *expressly* authorized by this [election] code." *Id.* § 276.019 (emphasis added).

39. Defendant Jacquelyn Callanen is an agent of Bexar County; she cannot take any action in her official capacity that exceeds the scope of the County's powers. She "possesses only those powers 'granted in express words' or 'necessarily or fairly implied in' an express grant—powers 'not simply convenient' but 'indispensable.'" *Hollins*, 620 S.W.3d at 406.

40. Defendants Peter Sakai, Rebeca Clay-Flores, Justin Rodriguez, Grant Moody, and Tommy Calvert make up the Bexar County Commissioners Court. They too "possess[] only those powers 'granted in express words' or 'necessarily or fairly

implied in' an express grant—powers 'not simply convenient' but 'indispensable.'" *Id.*; *see also City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003) (noting the limited nature of commissioner courts' powers).

41. "Any reasonable doubt must be resolved against an implied grant of authority." *Hollins*, 620 S.W.3d at 406.

### A. Voter Registration

42. According to the Election Code, "[a] person desiring to register to vote" in Texas "must submit an application to the registrar of the county in which the person resides." § 13.002(a).

43. Not everyone is qualified to register to vote, however. A person is eligible for registration, only if he or she is (1) "18 years of age or older;" (2) "a United States citizen;" (3) has not "been determined by a final judgment of a court exercising probate jurisdiction to be: (A) totally mentally incapacitated; or (B) partially mentally incapacitated without the right to vote;" (4) has not "been finally convicted of a felony;" and (5) is "a resident of the county in which application for registration is made." § 13.001.

44. Traditionally, "[t]he county tax assessor-collector was the voter registrar for the county," but the Election Code also allows certain counties to appoint an election administrator to "perform[] the duties and functions of the voter registrar." §§ 31.043; 12.001. Defendant Callanen, as the election administrator, is the voter registrar for Bexar County.

45. The Election Code does not empower the voter registrar or any other county official to arrange for the mass mailing of voter registration forms unsolicited. To the contrary, the Election Code provides, officials "shall furnish forms in a

reasonable quantity *to a person requesting them* for the purpose of submitting or filing the document or paper." § 1.010(b) (emphasis added).

46. The county registrar, as an election official to whom a document is required to be submitted, "shall make printed forms for that purpose, as officially prescribed, readily and timely available." § 1.10(a). The Texas Supreme Court explained in *Hollins* that this provision, when read in context, simply means that the relevant officials must have the forms on hand to distribute to voters on request. 620 S.W.3d at 407.

47. The voter registrar has the authority to appoint persons who volunteer to serve as deputy registrars. Tex. Elec. § 13.031. Although a deputy registrar may distribute voter registration application forms, *id.* at § 13.038, "a person may not receive compensation from the county for service as a volunteer deputy registrar unless compensation is authorized by the commissioners court." *Id.* at § 13.037.

48. For a commissioners court to authorize said compensation, it must follow proper procurement procedures. *See infra.* The Bexar County Commissioners Court failed to do so here.

49. In addition, even if compensation is properly authorized by the Commissioners Court, the Election Code prohibits performance-based compensation for registering voters. §§ 13.008(a)(1-4). Compensation may not be "based on the number of voter registrations . . . successfully facilitate[d]" or conditioned on a "quota of voter registrations to facilitate." *Id.* § 13.008(a)(1-2). Violations of this section constitute a Class A misdemeanor.

50. From all available evidence, it appears that the Bexar County Commissioners Court has premised the contract price on the number of voters contacted and/or registered. This arrangement violates the statute.

Plaintiff's Original Verified Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction    Page 10
*The State of Texas v. Jacquelyn Callanen*

## B. Improper Procurement

51. The Texas Local Government Code provides statutorily-mandated procurement procedures for counties contracting with vendors for more than $50,000.00. Tex. Loc. Govt. Code § 262.023. These procedures require competitive bidding, a reverse auction, or compliance with Texas Government Code Section 2269. *Id*. On information and belief, Defendants complied with none of these procedures.

52. Instead, according to the Commissioners Court agenda, Defendants claim their proposed contract with CGS is exempt from the requirements of Section 262.023 under Section 262.024(7)(a). *See* Agenda Item 66, reproduced *supra*. But the exceptions of Section 262.024(7)(a) are inapplicable. Those exceptions occur only where there is no competition for the contracted services due to "patents, copyrights, secret processes, or monopolies." Tex. Loc. Govt. Code § 262.024(7)(a).

53. Defendants make no mention of what patent, copyright, secret process, or monopoly prevents them from undergoing the transparent bidding process mandated by Texas procurement laws governing counties. The reason is simple: there is no such basis to forego statutorily-mandated procurement procedures. This is particularly true where Defendants are entrusting a partisan vendor with responsibilities in Texas elections.

54. By skipping mandatory procurement procedures in selecting a partisan vendor to send voter registration applications to recipients who may or may not be eligible to vote, Defendants exceed their authority, and any implied authority necessary to carry out their duties. Defendants' vote to contract with CGS is there for *ultra vires*, and the Court should enjoin any further action by Defendants to complete the procurement process.

### The State of Texas requests an injunction against Defendants' *ultra vires* acts

55. The Court should issue such an injunction because Defendants lack the authority to contract with a vendor outside the statutory procurement process, and similarly lack authority to send unsolicited voter registration applications to recipients who may or may not be eligible to vote. Defendants' acts are therefore *ultra vires*.

56. In an *ultra vires* case, a plaintiff must allege, and ultimately prove, that an officer acted without legal authority or failed to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

57. Counties in Texas are limited to exercising those powers that are specifically conferred on them by statute or the constitution. *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 863 (Tex. 1993). The County has no sovereign power of its own: It "is a subordinate and derivative branch of state government." *Avery v. Midland Cty.*, 406 S.W.2d 422, 426 (Tex. 1966), *rev'd on other grounds*, 390 U.S. 474 (1968); see TEX. CONST. art. IX, § 1 ("The Legislature shall have power to create counties for the convenience of the people"); *id.* art. XI, § 1 ("The several counties of this State are hereby recognized as legal subdivisions of the State."). As a political subdivision, the County "represent[s] no sovereignty distinct from the state and possess[es] only such powers and privileges" as the State confers upon it. *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (quotation omitted); accord *Quincy Lee Co. v. Lodal & Bain Engineers, Inc.*, 602 S.W.2d 262, 264 (Tex. 1980).

58. A commissioners court also has power "necessarily implied to perform its duties." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003). Such powers must, however, be "indispensable" to perform such an express grant of authority, *Foster v. City of Waco*, 255 S.W. 1104, 1105–06 (Tex. 1923). "Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied." *Id.*

59. There is no statute empowering Defendants to circumvent statutory procurement procedures or to send voter registration applications to recipients who may or may not be registered to vote. Nor do those acts constitute exercises of power necessarily implied to perform Defendants' duties.

60. In fact, Defendants' actions undermine Texas law. A governmental entity sending voter registration applications may cause recipients who are ineligible to vote to believe they may register. At best, applications sent to these individuals will simply go unused. More likely, these excess applications will become ripe material for voter fraud.

61. Sending voter registration applications to every voter, without any attempt at all to tailor such a mass-mailing to persons who definitively are eligible to vote, is certain to result in large numbers of applications from voters who are ineligible to vote. Regardless of whether Defendants includes literature in their mailing attempting to explain voter eligibility criteria, it is inevitable that recipients of applications from a public official with the imprimatur of state authority will wrongly assume they are eligible to vote.

62. Similarly, circumventing statutorily-mandated procurement processes in order to award a no-bid contract to a partisan vendor exceeds Defendants' authority and undermines the integrity of Texas's electoral process and Texans' faith in that integrity. The court must thus infer that some of those ineligible voters will submit the applications and be incorrectly approved to vote.

63. Defendants' plan to send voter registration applications *en masse* to recipients who may or may not be eligible to vote is *ultra vires*. Likewise, Defendants' plan to contract with a partisan vendor outside the statutory procurement process is *ultra vires*. Defendants should be enjoined.

### Application for a Temporary Restraining Order

64. "The purpose of a TRO is to preserve the status quo, which we have defined as the last, actual, peaceable, non-contested status which preceded the pending controversy." *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (footnote and internal quotation marks omitted).

65. If the Court does not issue the requested temporary restraining order, the status quo will be irrevocably broken. The proximity of the upcoming election demonstrates Defendants' intent to carry out their plans imminently. Once that happens, there will be no way to recall more than 200,000 pieces of mail.

66. The State will suffer irreparable injury in that event. As a sovereign entity, Texas has an inherent right to enforce its own law. *Naylor*, 466 S.W.3d at 790. And the State "indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989). That right will be fundamentally undermined the moment that mail goes out. And no other way exists to make Plaintiff whole. The State's sovereign interest cannot be remedied with monetary damages. *See Hollins*, 620 S.W.3d at 410. State officers will be required to combat the confusion that will inevitably result from Defendants' actions. Even if state officers were able to divert their full attention to that task, it likely will not repair the resulting damage. Moreover, time they spend on this issue will distract them from their other critical duties just weeks before an election.

67. Therefore, the State is entitled to a temporary restraining order preserving the status quo by enjoining Defendants from sending unsolicited voter registration applications until the temporary injunction hearing.

### Application for a Temporary Injunction

68. For similar reasons, the State is entitled to a temporary injunction. A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

69. Plaintiff must prove three elements to obtain a temporary injunction: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.*

70. Plaintiff describes its probable right to recovery above. Plaintiff is not required to establish that it will prevail at trial to obtain a temporary injunction. *Butnaru* at 211.

71. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru* at 204. If Defendants are not enjoined and send the applications, damages are not available as a remedy and would not compensate Plaintiff in any event for the reasons discussed above. *See Hollins*, 620 S.W.3d at 410.

72. Therefore, Plaintiff is entitled to a temporary injunction enjoining Defendants from committing the *ultra vires* act of sending unsolicited voter registration applications to recipients who may or may not be eligible to vote.

### Application for a Permanent Injunction

73. Plaintiff requests trial on the merits, where it will seek a permanent injunction enjoining Defendants from committing the *ultra vires* acts of sending unsolicited voter registration applications and contracting with a partisan vendor in violation of statutory procurement procedures.

## Prayer

74.     Therefore, Plaintiff seeks a temporary restraining order, temporary injunction, and permanent injunction enjoining Defendants from sending unsolicited voter registration applications to the residents of Bexar County.

## Request for Disclosure

75.     Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Texas Rules of Civil Procedure 194.2.

Dated: September 3, 2024.

                        Respectfully submitted,

                        KEN PAXTON
                        Attorney General

                        BRENT WEBSTER
                        First Assistant Attorney General

                        RALPH MOLINA
                        Deputy First Assistant Attorney General

                        AUSTIN KINGHORN
                        Deputy Attorney General for Legal Strategy

                        RYAN D. WALTERS
                        Chief, Special Litigation Division

                        */s/Kathleen T. Hunker*
                        KATHLEEN T. HUNKER
                        Special Counsel
                        State Bar No. 24118415

GARRETT GREENE
Special Counsel
State Bar No.24096217

RYAN KERCHER
Deputy Chief, Special Litigation Division
State Bar No. 24060998

Special Litigation Division
OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 936-1706 • fax (512) 320-0167
Kathleen.Hunker@oag.texas.gov
Garrett.Greene@oag.texas.gov
Ryan.Kercher@oag.texas.gov

*ATTORNEYS FOR PLAINTIFF*

Plaintiff's Original Verified Petition and Application for Temporary Restraining Order, Temporary
Injunction, and Permanent Injunction                                                          Page 17
*The State of Texas v. Jacquelyn Callanen*

Cause No. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>　　*Plaintiff,*<br><br>v.<br><br>JACQUELYN CALLANEN in her official capacity as Bexar County Election Administrator; PETER SAKAI, in his official capacity as Bexar County Judge; REBECA CLAY-FLORES, in her official capacity as Bexar County Commissioner; JUSTIN RODRIGUEZ, in his official capacity as Bexar County Commissioner; GRANT MOODY, in his official capacity as Bexar County Commissioner; TOMMY CALVERT, in his official capacity as Bexar County Commissioner.<br><br>　　*Defendant.* | §§§§§§§§§§§§§§§§§§§§§ | In the District Court of<br><br>Bexar County, Texas<br><br>_____ Judicial District |

**Declaration of Austin Kinghorn**

My name is Austin Kinghorn. I am over eighteen years of age, am of sound mind, and am capable of making this declaration. I am an employee of the following governmental agency: the Office of the Attorney General of Texas. I am executing this declaration as part of my assigned duties and responsibilities as the Deputy Attorney General for Legal Strategy.

I have read the above Original Verified Petition and Application for Temporary

Restraining Order, Temporary Injunction, and Permanent Injunction. I verify under penalty of perjury that the facts stated therein are within my personal knowledge and are true and correct.

_____
Austin Kinghorn

Sworn and subscribed before me on _____, 2024.


_____
Notary Public, State of Texas