IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>*Plaintiff,*<br><br>v.<br><br>JACQUELYN CALLANEN in her official capacity as Bexar County Election Administrator; PETER SAKAI, in his official capacity as Bexar County Judge; REBECA CLAY-FLORES, in her official capacity as Bexar County Commissioner; JUSTIN RODRIGUEZ, in his official capacity as Bexar County Commissioner; GRANT MOODY, in his official capacity as Bexar County Commissioner; TOMMY CALVERT, in his official capacity as Bexar County Commissioner.<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:24-cv-1043 |

## STATE OF TEXAS'S EMERGENCY MOTION FOR REMAND

Our elections and our civil justice system both depend on redoubtable process. Eligible citizens registering to vote is a civic virtue, but that virtuous end does not justify unlawful means. The desire to register voters, whether for virtue or partisan gain, does not empower local officials to run roughshod over the rule of law.

The Defendants in this case, all Bexar County officials, have undertaken a lawless misadventure that—like any dishonesty—has only worsened with each attempt to avoid responsibility. Defendants contracted with a partisan vendor to send unsolicited voter registration

applications to county residents. Defendants lack lawful authority to enter into or perform under this contract. And government officials sending unsolicited voter registration applications—whether directly or through a partisan vendor—injures the State by disrupting the hierarchy of lawful authority, sowing confusion among voters, diluting lawful votes, and inviting illegal voter registration with the imprimatur of the County seal.

The State warned Defendants that their actions would be unlawful. Defendants acted anyway. The State sued Defendants, who rushed their mailings out over the objection of their own county registrar while the State sought to confer on a hearing date for its applications for temporary restraining order and temporary injunction. By the time the hearing occurred, Defendants claimed to have completed their fete, and argued the motion was moot. The trial court agreed and denied the State's motion. The State immediately appealed and sought emergency relief from Texas's Fifteenth Court of Appeals. To avoid additional judicial review, and to avoid lawful accountability for their statements in open court that the county would mail no more, Defendants frivolously removed to this Court.

The Court should grant emergency consideration to this motion and swiftly remand. This Court has no jurisdiction over the State's claims, which arise entirely under state law. The Court should not indulge Defendants' cynical short-circuiting of process to avoid the legal consequences of their unlawful actions. Finally, the Court should award the State its fees and costs for Defendants' wrongful, and frivolous, removal.

## FACTUAL BACKGROUND

From the very inception of this suit, Bexar County has exerted herculean efforts to evade the strictures of Texas law, the constraints of public accountability, and the scrutiny of judicial review. It has rushed to approve a contract violative of Texas election law and proper procurement procedures, raced to initiate performance of that contract in contravention of stipulated agreement, and now is running headlong from state-court review of its unlawful actions.

In the days leading up to September 2, 2024, Bexar County formulated a scheme under which it would hire a private contractor to mass mail unsolicited voter registration forms to Bexar

County residents—an action that Bexar County could not lawfully take on its own account. *See State v. Hollins,* 620 S.W.3d 400 (Tex. 2020). Upon learning of this scheme, Attorney General Ken Paxton sent a letter to the Bexar County Commissioners Court warning that the proposal was *ultra vires* under binding state law and posed a significant threat to the security of Texas's elections. Letter from Texas Attorney General Ken Paxton, *Bexar County Voter Registration*, (Sep. 2, 2024), https://tinyurl.com/mudk3f83.

That letter went unheeded. On September 3, 2024, the Bexar County Commissioners Court held a public meeting at which it approved an agenda item hiring Civic Government Solutions (CGS) to perform a task that Bexar County would not openly undertake—a mass mailing of unsolicited voter registration forms in contravention of Texas election law. *See generally* Bexar County Commissioners Court, Agenda for Sept. 3, 2024, Bexar County, https://www.bexar.org/AgendaCenter/ViewFile/Agenda/0903 2024-1621 (last visited Sept. 17, 2024) (Recording available at https://bexar countytx.new.swagit.com/videos/313881). Under the contract, Bexar County agreed to pay CGS $392,700 to mail 210,000 unsolicited voter registration applications to whom CGS asserted were voting eligible but still unregistered Bexar County residents. *Id.* In approving the measure, the Commissioners Court blatantly ignored the competitive bidding requirement for local government contracts, citizen concerns over the flagrantly partisan motivations of CGS's chief executive, the objections of Bexar County Elections Administrator Jacquelyn Callanen, and the warnings of the Texas Attorney General. *See id.*

That same day, Texas filed suit to enjoin performance of Bexar County's *ultra vires* agreement with CGS. Pl.'s Original Pet. & Appl. For TRO, TI, and PI, Cause No. 2024CI19710 (Sept. 3, 2024). The State emphasized that Texas law prohibits Bexar County from using a private contractor to make an end run around the inherent limitations of its authority stemming from its status as a political subdivision. *Id.* at 7–9. The State also pointed out that Bexar County's failure to follow the competitive bidding procedure required by Texas law made lawful performance of any part of its contract with CGS a logical impossibility. *Id.* at 11. Texas sought a temporary restraining order, temporary injunction, and permanent injunction to prevent the County from further engaging in these ultra vires acts.

With a lawsuit in court, Bexar County only increased its recalcitrance. After making a show of attending a hearing that was never scheduled, it ignored the State's efforts to negotiate an

orderly litigation process. On Monday, September 9, the County complained that it lacked sufficient notice to proceed with the State's request for a TRO hearing. Then, the morning of the scheduled TRO hearing on September 10, the County and the State stipulated to a combined TRO and temporary injunction hearing on September 16. Consistent with their obligations as officers of the Court and members of the bar to allow an opposing party to respond, counsel for the State agreed to this arrangement. Texas only later discovered that even as the County was stipulating to a combined hearing, it was simultaneously accelerating its efforts to have the illicit mass mailing of voter registration applications completed prior to the rescheduled hearing that it had insisted upon.

The State immediately filed an emergency request for a TRO seeking to prohibit the County from taking any further action under its ultra vires contract, including making any payments, because the State could no longer trust the County to act in good faith. At a hearing on September 16, the trial court orally denied the State's original request for a TRO and a temporary injunction. The State immediately appealed the denial of the temporary injunction and sought an emergency temporary order to prevent any further performance of the CGS contract pending appeal.

And now, the County has once again sought to avoid judicial review, this time by filing a baseless notice of removal to federal court.

## LEGAL STANDARD

A defendant may only remove an action filed in state court to federal court if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). Because federal Courts have limited jurisdiction, a defendant may only remove a case that includes a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of 28 U.S.C. § 1331). "[T]he effect of removal is to deprive the state court of an action properly before it," which raises "significant federalism concerns." *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). Statutes that authorize removal therefore must be strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand. *See Hood ex rel. Miss. v. JP Morgan Chase & Co.,* 737 F.3d 78, 89 (5th Cir. 2013).

4

The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.,* 275 F.3d 414, 417 (5th Cir. 2001). A federal court's jurisdiction is limited, and federal courts may hear only a case if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332. "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003). "[T]he basis upon which jurisdiction depends on must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Ill. Cent. Gulf R. Co. v. Pargas, Inc.,* 706 F.2d 633, 636 (5th Cir. 1983) (citation and internal quotation marks omitted). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## ARGUMENT & AUTHORITIES

Defendants have sought removal to federal court for one simple purpose: to insulate their illegal conduct from judicial review. This Court should not let them. Not only can Defendants identify no federal interest or question sufficient to establish this Court's jurisdiction, but their attempt at removal undermines the principles of federalism by precluding Texas from interpreting and enforcing a vital question of Texas law over its own internal governance.

Time and again, federal courts have "reiterated the need to give due regard to the rightful independence of state governments—and more particularly, to the power of the States to provide for the determination of controversies in their courts." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 389 (2016) (cleaned up). That need only yields when the federal interest in the resolution of a case outweighs the serious federalism concerns incumbent to removal proceedings, such as when, on the face of a well-pleaded complaint, a claim arises under the Constitution, laws, or treaties of the United States. *In re Hot-Hed Inc.*, 477 F.3d at 323.

Defendants make no such showing here. The only interests present in this case are Texas's sovereign prerogative to maintain and police the limits of the authority it has granted to its subordinate branches of state government and Texas's duty to ensure the security and integrity of

its elections. Given these disparate interests, removal would encroach on the balance of federal and state power and is therefore inappropriate. This Court should remand the matter back to state court for resolution.

## I.   Texas Raises Only State-Law Claims; There is no Federal Question Jurisdiction.

The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when "some substantial, disputed question of federal law" is presented on the face of the plaintiff's properly pleaded complaint. *In re Hot-Hed Inc.*, 477 F.3d at 323; *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). No such question appears in Texas's pleading. This legal action instead involves a dispute over the internal operations of Texas and one of its political subdivisions: specifically, whether the Commissioners Court has the authority to enter into a contract with a partisan vendor for the purposes of mass mailing thousands of unsolicited voter registration forms, regardless of the recipient's eligibility.

Far from arising from federal law, Texas's cause of action stems from its power as sovereign. It is well-established in Texas that "[t]he authority vested in Texas counties—and county officials—is limited." *Yett v. Cook*, 115 Tex. 205, 220 (1926) Counties represent "a subordinate and derivative branch of state government." *Avery v. Midland Cty.*, 406 S.W.2d 422, 426 (Tex. 1966). They therefore possess only those powers conferred to them by the Texas Constitution or the Texas Legislature. *Guynes v. Galveston Cty.*, 861 S.W.2d 861, 863 (Tex. 1993). "[W]here those laws are being defied or misapplied by a local official," Texas may use an *ultra vires* suit "to reassert the control of the state," *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)), as it has done so here.

Nor can Defendants show that a federal right is "an element, and an essential one, of the plaintiff's cause of action." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995) (emphasis added) (quoting *Gully v. First Nat'l Bank*, 299 U.S. 109, 111 (1936)). To establish a basis for relief, Texas must show that the Commissioners Court lacked an express or implied

grant of authority *under state law*. The county, after all, is a creature of the state. The federal government has zero input regarding the state's allocation of power to its various branches. That Defendants raised, at the eleventh hour, a federal defense is irrelevant. *See infra*-Part II. "The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809, n. 6 (1986).

## II.  Defendants Fail to Show Federal Question Preemption as a Basis for Removal

To begin, it is not sufficient for the federal question to be raised in an answer or in the petition for removal—as Defendants have done here. *Stump v. Potts*, 322 Fed. Appx. 379, 380 (5th Cir. 2009). Nor can Defendants use the federal defense of preemption to establish federal question jurisdiction authorizing removal. Indeed, "[p]reemption is normally only a defensive issue and does not authorize removal." *Casey v. Rainbow Group, Ltd.*, 109 F.3d 765 (5th Cir. 1997); *see also Fran. Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 14 (1983) ("[S]ince 1887 it has been settled law that a case may not be removed to a federal court on the basis of a federal defense, including the defense of preemption . . . ."). Simply put, allowing Defendants to remove to this Court based on the defensive issue of preemption would "eviscerate . . . the well-pleaded complaint rule." *Casey*, 109 F.3d 765. This case should be remanded to state court for this reason alone.

Beyond that, Defendants point to no case law concluding the National Voter Registration Act (NVRA)[1] completely preempts purely state law ultra vires claims like those brough in this case. The "complete preemption"[2] doctrine creates a narrow exception to the well-pleaded complaint

---

[1] 52 U.S.C. § 20501(a).

[2] "Complete preemption," which creates federal removal jurisdiction, differs from more common "ordinary preemption" (also known as "express" or "conflict preemption"), which does not. *Johnson v. Baylor U.*, 214 F.3d 630, 632 (5th Cir. 2000); *Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999) (overruled on other grounds). Yet Defendants do not argue the NRVA completely preempts Texas's purely state law claims. Rather, Defendants only claim the

rule, allowing removal of an otherwise unremovable state court action where Congress has "so completely preempt[ed] a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Johnson*, 214 F.3d at 632 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). To that end, "the driving force behind federal question preemption is that the plaintiff has *no state claim at all*." *Casey*, 109 F.3d 765 (citation omitted) (emphasis in original). Yet Texas brings purely state law claims. And Defendants fail to point to any "clearly manifested congressional intent to make [Texas's] state claims removable to federal court." *Casey*, 109 F.3d 765. Indeed, since complete preemption is "less common and more extraordinary" than ordinary preemption, the Supreme Court has found complete preemption only three times. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003) (indicating that the Supreme Court had found complete preemption under the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act). Aside from Texas bringing purely state law claims, preemption only being raised by Defendants in their notice of removal (and even then, Defendants failing to argue "complete preemption"), Defendants give this court no reason to add the NRVA to this limited list.

### III. Defendants Fail to Establish Federal Jurisdiction Under the *Grable* Doctrine.

Setting all that aside, Defendants cannot claim federal removal under *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (the "*Grable* doctrine"). Simply put, no plausible argument exists that a notice of removal designed to evade Texas state court review of a state law dispute between Texas and a political subdivision falls within the "slim category" of state law claims that raise significant federal issues.

---

"Plaintiff's amended petition sets forth claims that are *expressly or impliedly preempted* by federal law." Dkt. 1 at 3 (emphasis added). But these are both forms of "ordinary preemption" defenses that do "not authorize removal to federal court." *Heimann*, 187 F.3d at 500. So Defendants offer nothing in their Notice that would be a valid basis for federal removal. Still, even if Defendants had argued "complete preemption" it fails for the reasons above.

Under the *Grable* doctrine, federal question jurisdiction will lie over state law claims that implicate significant federal issues. *Grable & Sons Metal Products, Inc.*, 545 U.S. at 312. In such cases, federal jurisdiction may exist if "the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal.*, 463 U.S. at 27–28.

The Supreme Court has called this category of federal question cases "special and small," *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006). To that end, the Court has directed that federal courts not treat a "federal issue" as a password opening federal courts to any state action embracing a point of federal law. *Grable & Sons Metal Products, Inc.*, 545 U.S. at 314; *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986) (holding that the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"). "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 314.

In 2013, the Supreme Court, "[i]n an effort to bring some order to this unruly doctrine raised several Terms ago," articulated four factors that must be met for an issue of federal law to fall withing the narrow category of those conferring "*Grable* doctrine" federal question jurisdiction: that the federal issue be: (1) necessarily raised, (2) disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Defendants fail to show (and do not even argue) that this is one of the "slim" categories of cases where federal jurisdiction may lie under the "*Grable* doctrine."

Indeed, there is no "actually disputed and substantial" federal issue here. The sole issue in *Grable* was a dispute involving the meaning of provisions in the federal Tax Code. The meaning of the statute was in dispute and controlled the outcome of the case. *Id.* at 315. In other words, because construing a federal statute is the work of a federal court, *Grable* affirmed the lower court's denial of the plaintiff's Motion to Remand. That is not the case here. The conduct of the United States

is not at issue here, nor is that of any federal agency. Texas does not base its claims on any federal law or regulation, nor is any such law or regulation an element of its cause of action. Rather, Texas is simply seeking to invoke its "intrinsic right to enact, interpret, and enforce its own laws," *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015), against one of its political subdivisions. That is far from a federal issue.

But above all, federal jurisdiction here will disturb the balance of federal and state judicial responsibilities and dramatically shift the division of labor between the state and federal judiciaries. Texas's claims are based entirely on ensuring the *Texas* Election Code and the *Texas* County Purchasing Act are not violated by a *Texas* County. Indeed, federal courts exercising jurisdiction over these kinds of claims would herald "a potentially enormous shift of traditionally state cases into federal cases." *Grable & Sons Metal Products, Inc.*, 545 U.S. at 319.

Put plainly, Defendants seek to usurp Texas's well-pleaded complaint by trying to inject a federal question into a complaint devoid of any such issue. To allow this kind of procedural maneuvering would be to "federalize" run-of-the-mill ultra vires actions of States reasserting their authority over a subordinate and derivative branch of state government. Beyond the significant federalism concerns at play, such maneuvering could not be done "without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258.

All things considered; federal question jurisdiction does not exist. And Defendants have the burden to establish that this case satisfies each of the four *Grable* prongs to justify removal. *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022). Since Defendants did not make a sufficient showing with respect to any of the *Grable* prongs, removal should be denied.

## IV. Texas is Entitled to Emergency Relief and Swift Remand.

Despite representing in open court at the TRO and TI hearing that Bexar County would send no further mailings, Defendants removed the case as soon as the State sought emergency relief from the Fifteenth Court of Appeals. To avoid that relief, and to buy time for additional unlawful action, Defendants have made up removal arguments from whole cloth. This Court should not indulge prejudicial gamesmanship that makes a mockery of state court jurisdiction.

When defendants frivolously remove proceedings to federal court to avoid imminent and unfavorable state court rulings, federal courts have been inclined to grant plaintiffs' requests for expedited consideration of an emergency motion to remand. See *Clear Channel Commc'ns, Inc. v. Citigroup Glob. Markets, Inc.*, 541 F. Supp. 2d 874, 876 (W.D. Tex. 2008) (federal court agreed to expedited consideration of an emergency motion for remand to state court after plaintiffs argued that the notice of removal was "frivolous and was filed in bad faith to (1) avoid the effects of a temporary restraining order . . . and (2) delay or even escape the hearing on Plaintiffs' request for temporary injunction.") (quoting Plaintiffs' Amended Emergency Motion for Remand and Request for Expedited Ruling, 2008 WL 2126527).

When a federal court determines that it lacks subject-matter jurisdiction over a removed matter, "an immediate remand is required." *Miller v. Dunn*, No. 3:24-CV-1105-D, 2024 WL 2187551 at *2 (N.D. Tex. May 15, 2024) (citing 28 U.S.C. § 1447(c)); *Lutostanski v. Brown*, 88 F.4th 582 (5th Cir. 2023). And federal district courts have repeatedly responded to defendants' attempts to abuse Article III jurisdiction with a swift remand back to state court. After the defendant in *Miller* improperly removed the case to federal court one day before a scheduled TRO hearing in an ongoing suit affecting the parent-child relationship, the court granted the plaintiff's emergency motion to remand seven days later. *Id.* When local officials in Missouri removed the State's action to enjoin county face mask mandates to federal court based solely on the petition's brief reference to the Free Exercise Clause, the federal court granted the emergency motion to remand to state court just two days later. *State ex rel. Schmitt v. Page*, No. 4:21-CV-00948-SRC, 2021 WL 3286787, at *2 (E.D. Mo. Aug. 1, 2021) (quoting Fed. R. Civ. P. 1, "the Federal Rules of Civil Procedure 'should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.'"). And when a Southern Methodist University sorority sought to avoid a temporary restraining order by a state court allowing certain members to move into its sorority house by improperly removing the proceedings to federal court, the court granted the plaintiffs' emergency motion to remand just four days after the notice of removal. *Does 1-9 v. Kappa Alpha Theta Fraternity Inc.*, No. 3:22-CV-

1782, 2022 WL 18610075 (N.D. Tex. Aug. 19, 2022) (finding that the amount in controversy had not been met).

In this case, Defendants have plainly removed to avoid an imminent ruling by Texas's Fifteenth Court of Appeals, where the State had sought emergency relief. Bexar County's appeal from an appellate court after consenting to the trial court's hearing on the State's applications for temporary restraining order and temporary injunction, and where the basis for removal is assertion of a merits defense, is frivolous. This removal deprives the State of its chosen forum for its purely state-law claims and is a blatant attempt by Defendants to delay further judicial scrutiny of their actions and the emergency relief the State rightly sought from the Fifteenth Court of Appeals. Emergency consideration of this motion and a swift remand are necessary to thwart Defendants' naked play for time and prevent further harm to the State.

## V.  The Court Should Award Texas Its Attorneys' Fees and Costs.

Texas is entitled to recoup its attorneys' fees and costs for Defendants' improper removal pursuant to 28 U.S.C. § 1447, which provides that a district court order remanding an improperly removed case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Costs in excess of "ordinary litigation expenses that would have been incurred had the action remained in state court" may be imposed whenever "the court finds that removal is improper under § 1447(c)." *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997); *Howard v. St. Germain*, 599 F.3d 455, 457 (5th Cir. 2010). Attorney's fees incurred as a result of removal may be awarded "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 126 S. Ct. 704, 711 (2005). Although this Court "may award fees even if removal is made in subjective good faith," Defendants' conduct simultaneously lacks an objectively reasonable basis and supplies strong evidence of a subjective bad-faith intent. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

"The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources." *Martin,* 126 S. Ct. at 711. "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* Here, Defendants have engaged in precisely the pattern of behavior that the fee-shifting provision of § 1447 is designed to disincentivize. As laid out above, Defendants have laid before this court a baseless removal action in a naked attempt to skirt forthcoming judicial review of their illegal conduct. A defense cannot form the basis for removal under federal question jurisdiction. *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 123 S. Ct. 2058, 2062 (2003) ("As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim."). Despite this well-settled principle, Defendants nevertheless base their removal action on a defense. For this reason, and for the additional reasons describing herein why Defendants' removal is improper, the Court should award attorneys' fees.

As is true for every other aspect of litigation, removal is not a proper vehicle for a party's expression of "bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Hutto v. Finney*, 98 S. Ct. 2565, 2573 n.4, (1978). Nevertheless, Defendants, faced with state court appellate review, have commandeered removal as a means of evading the just administration of the law. Defendants' endgame is crystal clear—they seek to delay judicial review by the state appellate court by framing their action as a federal issue in hopes of taking action that would moot this matter. There can be no other interpretation of their actions. Moreover, Defendants lacked any objectively reasonable basis to remove the action. For that reason, Defendants' bad faith, frivolous removal action warrants attorneys' fees.

### CONCLUSION

For the foregoing reasons, the State respectfully moves for emergency consideration and for immediate remand.

Date: September 17, 2024                    Respectfully submitted.

KEN PAXTON                                  /s/ Ryan G. Kercher
Attorney General of Texas                   RYAN G. KERCHER
                                            Deputy Chief, Special Litigation Division
BRENT WEBSTER                               Tex. State Bar No. 24060998
First Assistant Attorney General

                                            KATHLEEN T. HUNKER
RALPH MOLINA                                Special Counsel
Deputy First Assistant Attorney General     Tex. State Bar No. 24118415

AUSTIN KINGHORN                             GARRETT GREENE
Deputy Attorney General for Legal           Assistant Attorney General
Strategy                                    Tex. State Bar No. 24096217

RYAN D. WALTERS
Chief, Special Litigation Division          COUNSEL FOR STATE DEFENDANT


OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
(512) 463-2100
ryan.kercher@oag.texas.gov
kathleen.hunker@oag.texas.gov
garrett.greene@oag.texas.gov


### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 17, 2024, and that all counsel of record were served by CM/ECF.

/s/ Ryan G. Kercher
RYAN G. KERCHER