FILED
March 18, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____NM_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>Plaintiff,<br><br>v.<br><br>TOMMY CALVERT, *in his official capacity as Bexar County Commissioner, et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ CIVIL NO. SA-24-CV-01043-OLG |

## ORDER

Before the Court is Plaintiff State of Texas's ("Texas") Emergency Motion for Remand ("Motion"), filed on September 17, 2024. (Dkt. No. 2). Defendants Tommy Calvert, Jacquelyn Callanen, Peter Sakai, Justin Rodriguez, Rebeca Clay-Flores, and Grant Moody[1] (collectively, "Defendants") filed a response (Dkt. No. 15), and Texas filed a reply (Dkt. No. 19).[2] After careful consideration of the briefing, applicable law, and record, the Court finds that the Motion should be granted.

### I.  BACKGROUND

The nature of this action concerns Texas suing Bexar County officials for their allegedly *ultra vires* acts in providing a "partisan organization . . . hundreds of thousands of taxpayer dollars to mail unsolicited voter registration applications to an untold number of Bexar County residents" during the 2024 election. (*See* Dkt. No. 1-2 at 2). On September 3, 2024, the Bexar County Commissioners Court held a public meeting, during which the Commissioners voted on an agenda item regarding the approval of hiring Civic Government Solutions, LLC ("CGS") "to print and

---

[1] Each Defendant was sued in their official capacity.
[2] The Court acknowledges that the parties have filed multiple supplements to their filings. (*See* Dkt. Nos. 6, 10, 11, 12, 14, 17, 20).

mass mail voter registration applications" to individuals residing in Bexar County. (*See id.* at 5–6). Despite one Commissioner expressing concern that the County had abandoned its competitive bidding process in selecting CGS as well as citizens stating that CGS's mailing efforts were unlikely to remain nonpartisan, the agenda item passed. (*See id.* at 6–7).

That same day, Texas filed suit against Defendants in the 73rd Judicial District Court of Bexar County, Texas. (*See id.*) Texas sued Defendants in their official capacities, including the Bexar County Election Administrator, the Bexar County Judge, and all the Bexar County Commissioners. (*See id.* at 3–4). In its original petition, Texas alleged that Defendants committed *ultra vires* acts because "Defendants lack the authority to contract with a vendor outside the statutory procurement process" and "lack authority to send unsolicited voter registration applications to recipients who may or may not be eligible to vote." (*See id.* at 12–13). Texas also requested the state court to issue a temporary restraining order ("TRO"), a temporary injunction, as well as a permanent injunction "enjoining Defendants from committing the *ultra vires* acts of sending unsolicited voter registration applications" and contracting with CGS. (*See id.* at 14–15). Thereafter, Texas amended its petition to request declaratory judgment and address the allegedly bad faith acts committed by Defendants in scheduling a TRO hearing. (*See* Dkt. No. 1-1). On September 16, 2024, the trial court orally denied Texas's request for a TRO and a temporary injunction. (Dkt. No. 2 at 4).

On September 17, 2024, Defendants removed the action to this Court on the basis that Texas's state-law claims arise under federal law. (*See* Dkt. No. 1 at 3–4). Specifically, Defendants argue that Texas's claims are preempted by federal law because the National Voter Registration Act ("NVRA") permits Defendants to "accept and use a mail voter registration application form" to register voters for federal elections. (*See id.* at 3). On the same day, Texas filed its Motion,

2

requesting that this Court remand the action for lack of federal question jurisdiction and award Texas attorney's fees and costs for Defendants' improper removal. (*See* Dkt. No. 2 at 6–13). Defendants filed an amended notice of removal, claiming that removal is proper because of "clear Congressional [intent] to preempt [Texas]'s laws with respect to voter registration in federal elections." (*See* Dkt. No. 6 at 6). The parties then submitted several filings regarding the removal issue (*see* Dkt. Nos. 11, 12, 16, 18, 20), and Texas filed three additional emergency motions to remand (*see* Dkt. Nos. 10, 14, 17). Defendants filed a response to Texas's Motion, asserting that removal is proper under the complete preemption and *Grable* doctrines. (*See* Dkt. No. 15). Texas filed a reply. (Dkt. No. 19).

## II.   LEGAL STANDARD

A defendant may remove an action from state court to a federal district court that has original jurisdiction. 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A plaintiff can remand the case to state court based on a procedural or jurisdictional defect. *See* 28 U.S.C. § 1447(c). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). Because removal "raises significant federalism concerns," the removal statute is "to be strictly construed, and any doubt about the propriety of removal must

be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

## III.   ANALYSIS

### A.   Federal Question Jurisdiction

Although Texas alleges state-law claims, Defendants argue that federal question jurisdiction exists because the action arises under federal law—the NVRA. (*See* Dkt. No. 15 at 4). Defendants' justification for removal rests on two doctrines: the complete-preemption doctrine and the *Grable* doctrine. (*See id.*) Texas argues that its claims are not completely preempted by the NVRA because the federal statute "is designed to operate alongside state law," and Texas contends that its petition does not raise federal issues under *Grable*. (*See* Dkt. No. 19 at 1–2, 19). The Court addresses each doctrine below.

#### 1.   Complete Preemption of State Laws

Defendants argue that removal is appropriate because "the NVRA completely preempts any state laws regarding whether local governments may distribute federally-prescribed voter registration forms for federal elections." (*See* Dkt. No. 15 at 4). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). This rule, colloquially known as the "well-pleaded complaint rule," "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat. Bank*, 299 U.S. 109, 112–13 (1936)). "Thus, a plaintiff with a choice between federal and state-law claims may opt to proceed

in state court by asserting only state-law claims, thereby defeating the defendant's ability to remove." *Woodard-Hall v. STP Nuclear Operating Co.*, 473 F. Supp. 3d 740, 744 (S.D. Tex. 2020).

The complete-preemption doctrine is an exception to the well-pleaded complaint rule. *Id.* at 744–45. Complete preemption applies when "a federal statute wholly displaces the state-law cause of action." *Beneficial Nat. Bank*, 539 U.S. at 8. "The central inquiry in a complete-preemption analysis is 'whether Congress intended the federal cause of action to be the exclusive cause of action for the particular claims asserted under [the] state law.'" *Woodard-Hall*, 473 F. Supp. 3d at 745 (quoting *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 331 (5th Cir. 2008)).[3]

Defendants first argue that complete preemption applies to this action because there is a presumption that federal laws, such as the NVRA, "enacted pursuant to the Elections Clause completely preempt" state statutes that regulate federal elections. (*See* Dkt. No. 15 at 7). Defendants' argument is premised on the notion that "[w]hen Congress legislates with respect to . . . congressional elections, it *necessarily* displaces some element of a pre-existing legal regime erected by the States." (*See id.* at 6–7) (quoting *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 14 (2013)). Defendants also assert that even if the Court applies the Fifth Circuit's tripartite test for complete preemption, such preemption exists in this action. (*See id.* at 8–11). Specifically, Defendants contend that the third prong is satisfied because the NVRA's enactment

---

[3] The Fifth Circuit has held that a defendant, asserting complete preemption over purely state-law claims, must demonstrate: (1) "the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law," (2) "there is a specific jurisdictional grant to the federal courts for enforcement of the right," and (3) "*Congress intended the federal cause of action to be exclusive.*" *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 553 (5th Cir. 2008) (emphasis added) (quoting *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 775 (5th Cir. 2003)). The Court finds that the third prong addresses both of Defendants' complete-preemption arguments.

under the Elections Clause "evinces a plain intent to be the exclusive law" regarding statutory regulation of voter registration forms in federal elections. (*See id.* at 11).

The Court finds Defendants' complete-preemption arguments unconvincing. Defendants do not offer case law indicating that complete preemption applies when a defendant uses a federal statute—enacted pursuant to the Elections Clause—as a preemption defense. To date, the "Supreme Court has only found complete preemption in three areas: the usury provisions of the National Bank Act ("NBA"); the Employee Retirement Income Security Act of 1974 ("ERISA"); and the Labor Management Relations Act ("LMRA")." *Cantrell v. Briggs & Veselka Co.*, No. CIV.A. H-14-509, 2014 WL 6900846, at *2 (S.D. Tex. Dec. 5, 2014) (citation omitted). Although the Court acknowledges the preemptive effect federal legislation may have on conflicting state laws,[4] it does not necessarily follow that complete preemption would apply when: (1) a federal statute (the NVRA) operates in conjunction with a state's regulatory framework and (2) no conflict exists between the federal and state statutes.

Here, a careful review of Texas's Election Code and the NVRA reveals that no conflict exists between the statutes. Concerning the furnishment of voter registration forms, Texas's Election Code provides that an authority "shall furnish forms in a reasonable quantity to a person requesting them for the purpose of submitting or filing the document or paper." TEX. ELEC. CODE § 1.010(b). Under the NVRA, Congress has proscribed that a state's voter registration application must be made available simultaneously with a driver's license application, by mail application, and by application in person. 52 U.S.C. § 20503(a)(1)–(3). Notably, the plain language of § 20503(a) does not suggest that Congress enacted the NVRA to supplant state regulation over

---

[4] The Court notes that while complete preemption permits removal, ordinary preemption does not. *See Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("Defensive preemption does not create federal jurisdiction and simply 'declares the primacy of federal law, regardless of the forum or the claim.'" (quoting *Barrois*, 533 F.3d at 331)).

voter registration—the language implies that Congress envisioned state implementation of the NVRA alongside state regulation. *See* § 20503(a) ("[N]otwithstanding any other Federal or State law, *in addition to any other method of voter registration provided for under State law*, each State shall establish procedures to register to vote in elections for Federal office . . . .") (emphasis added).

The NVRA's statutory language does not contain a scintilla of congressional intent suggesting that the statute was enacted to displace state regulations over federal voter registration forms. *Cf. Woodard-Hall*, 473 F. Supp. 3d at 745 (identifying a complete-preemption analysis turns on whether Congress intended a federal cause of action to serve as the exclusive cause of action). Thus, the Court finds that Defendants' reliance on complete preemption for removal was improper.

### 2. *Grable* Doctrine

Defendants also argue that federal jurisdiction is established under the *Grable* doctrine because Texas's petition concerns a significant federal issue. (*See* Dkt. No. 15 at 12). The Supreme Court in *Grable* determined that "a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). The *Grable* doctrine applies when a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). In addition to recognizing that *Grable*'s "conditions are difficult to meet," the Fifth Circuit has stated that "*Grable* is applied in the shadow of the well-pleaded complaint rule." *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022) (citing *The Lamar Co., L.L.C. v. Miss. Transp. Comm'n*,

7

976 F.3d 524, 529 (5th Cir. 2020)). Courts, therefore, are required to assess the face of a plaintiff's well-pleaded complaint to determine whether "a state-law claim [is] premised on some component of federal law." *Id.*

Defendants argue that removal is proper under the *Grable* doctrine because Texas's state-law claims necessarily raise a substantial question of federal law—the NVRA—and place Defendants' enforcement of the statute in dispute. (*See* Dkt. No. 15 at 12–16). Defendants also contend that "federal court resolution will not disrupt Congress's federal-state balance." (*Id.* at 16). The Court finds Defendants' *Grable* argument unavailing because Defendants have not established that Texas's amended petition necessarily raises a federal issue.

In *Box v. PetroTel, Inc.*, a plaintiff sued an oil and gas company in state court based on allegations that the company breached an oral contract. *Box v. PetroTel, Inc.*, 33 F.4th 195, 196 (5th Cir. 2022). The company removed the action to federal court under the federal officer removal statute and *Grable* doctrine. *Id.* The Fifth Circuit determined that both bases for removal were improper, and the district court's remand order was affirmed. *Id.* at 197. In deciding the *Grable* issue, the Fifth Circuit rejected the company's argument that the plaintiff's petition necessarily raised a federal issue. *Id.* at 201. The Fifth Circuit reasoned that while the company could "plead contract illegality as an affirmative defense," the company could not establish federal question jurisdiction by asserting that the contract was void under federal securities laws. *Id.* at 201–02. Based on the face of the petition, the Fifth Circuit concluded that the plaintiff had not alleged a federal claim, thus precluding removal under *Grable*. *Id.* at 202.

Like *Box*, Defendants cannot assert federal question jurisdiction by raising the NVRA as a defense to Texas's state-law claims. More importantly, Texas's amended petition, on its face, does not raise any federal issues. (*See* Dkt. No. 1-1). The Court, therefore, finds that Defendants

improperly removed the action under the *Grable* doctrine. *See Box*, 33 F.4th at 202 (determining a lack of federal jurisdiction because a "federal claim does not appear on the face of the state court petition"); *Mitchell*, 28 F.4th at 589 (finding *Grable* does not apply when "federal issues are neither raised nor disputed on the face of the complaint").

The Court finds that it lacks subject-matter jurisdiction over this action because federal question jurisdiction is not established under the complete preemption or *Grable* doctrines. Accordingly, the Court must grant Texas's Motion and remand the action to state court.

**B.    Attorney's Fees**

In its Motion, Texas requests an award of attorney's fees and costs for Defendants' improper removal. (*See* Dkt. No. 2 at 12). Texas claims that such an award is warranted in this situation because "Defendants have laid before this [C]ourt a baseless removal action in a naked attempt to skirt forthcoming judicial review of their illegal conduct." (*See id.* at 13). Texas rests its argument on the fact that Defendants based their removal of the action on a defense, which cannot establish federal question jurisdiction. (*See id.*) Defendants claim that Texas's request for attorney's fees and costs is unsupported because Defendants had an objectively reasonable basis to remove the action. (*See* Dkt. No. 15 at 18–19).

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts *may* award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). The Fifth Circuit has made clear that "[i]f the removing party 'could conclude from . . . case law that its position was not an unreasonable one' at the time of removal, then it had an objectively reasonable basis for removal." *Thomas v. S. Farm*

*Bureau Life Ins. Co.*, 751 F. App'x 538, 540 (5th Cir. 2018) (quoting *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000)).

Given the lack of case law concerning the NVRA's preemption implications and state regulation of voter registration forms, the Court finds that Defendants did not lack an objectively reasonable basis for removal.[5] Issues regarding removal and complete preemption can be difficult to resolve because of the nature of assessing legislative intent. *Cf. Meisel v. USA Shade & Fabric Structures Inc.*, 795 F. Supp. 2d 481, 493 (N.D. Tex. 2011) (denying an award of attorney's fees "[g]iven the uncertainty regarding the relationship between the FCRA's two preemption provisions"). Although the Court recognizes Texas's concern in preserving the sanctity of its voter registration and procurement statutes, Texas has not demonstrated that Defendants sought removal to circumvent state litigation of this action. Accordingly, the Court denies Texas's request for an award of attorney's fees and costs.

## IV.   CONCLUSION

For the reasons set forth herein, Texas's Emergency Motion for Remand (Dkt. No. 2) is **GRANTED**, and this case is **REMANDED** to the 73rd Judicial District Court of Bexar County, Texas. Texas's Emergency Motion for Remand in Response to Amended Notice for Removal (Dkt.

---

[5] Since the filing of its Motion, Texas has apprised the Court of a similar action in which Judge Robert Pitman granted an emergency motion to remand filed by Texas. *See Texas v. Elfant*, No. 1:24-CV-1096-DII (W.D. Tex. Oct. 10, 2024). Even though Defendants removed the instant action prior to Judge Pitman's order, the Court finds Judge Pitman's reasoning to be persuasive regarding the denial of an award of attorney's fees.

> Although the [c]ourt disagrees with [d]efendants' arguments surrounding the applicability of the complete preemption and *Grable* doctrines, the [c]ourt does not find that [d]efendants lacked an objectively reasonable basis for relying on these doctrines. As [d]efendants note, these doctrines can be difficult to apply, and litigants may not know how courts will apply these doctrines to a specific federal statute until there is binding precedent as to that statute. The [c]ourt is unaware of any binding precedent . . . stating that the NVRA does not completely preempt state law *ultra vires* claims or that the *Grable* doctrine does not apply to NVRA defenses for such claims.

*See id.* at 12–13.

No. 10), Second Supplemental Emergency Motion for Remand (Dkt. No. 14), and Third Supplemental Emergency Motion for Remand (Dkt. No. 17) are **DENIED** as moot.

This case is **CLOSED**.

It is so **ORDERED**.

**SIGNED** this ___18___ day of March, 2025.

ORLANDO L. GARCIA
United States District Judge